# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JOSEPH TSOSIE,

       **Plaintiff,**

    vs.                                             **Civ. No. 17-794 KK**

NANCY A. BERRYHILL,
**Acting Commissioner of Social Security,**

       **Defendant.**

## MEMORANDUM OPINION AND ORDER[1]

    **THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 16) filed November 27, 2017, in support of Plaintiff Joseph Tsosie's ("Plaintiff") Complaint (Doc. 1) seeking review of the decision of Defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration, ("Defendant" or "Commissioner") denying Plaintiff's claim for Title XVI supplemental security income benefits. On February 2, 2018, Plaintiff filed his Motion to Reverse and Remand for Rehearing With Supporting Memorandum ("Motion"). (Doc. 21.) The Commissioner filed a Response in opposition on March 31, 2018 (Doc. 24), and Plaintiff filed a Reply on April 17, 2018. (Doc. 25.) The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds the Motion is not well taken and is **DENIED.**

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case. (Doc. 13.)

# I. Background and Procedural Record

Claimant Joseph Tsosie ("Mr. Tsosie") alleges that he became disabled on June 9, 2012, at the age of forty-seven because of spurs on his spine, right knee pain, left hip dislocation, asthma, chipped elbows, arthritis to all joints, stomach ulcer, vision problems, and memory loss. (Tr. 275, 432, 443.[2]) Mr. Tsosie completed the ninth grade in 1984/1985, and was self-employed making dream catchers. (Tr. 444.) Mr. Tsosie reported he stopped working on February 1, 2007, due to his medical conditions. (Tr. 443.)

On July 15, 2013, Mr. Tsosie protectively filed an application for Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 et seq. (Tr. 178, 391-400.) Mr. Tsosie's application was initially denied on February 28, 2014. (Tr. 274, 275-87, 303-06.) It was denied again at reconsideration on August 13, 2014. (Tr. 288, 289-302, 309-12.) On August 27, 2014, Mr. Tsosie requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 313.) ALJ Ann Farris conducted a hearing on September 18, 2015, but ended the hearing after Mr. Tsosie decided that he wanted legal representation. (Tr. 233-39.) ALJ Eric Weiss conducted a second hearing on April 12, 2016. (Tr. 202-32.) Mr. Tsosie appeared in person at the hearing with attorney representative Jonathan Woods.[3] (*Id*.) The ALJ took testimony from Mr. Tsosie (Tr. 206-225), and an impartial vocational expert ("VE"), Sandra Trost (Tr. 226-31). On May 12, 2016, ALJ Weiss issued an unfavorable decision. (Tr. 175-194.) On June 5, 2017, the Appeals Council issued its decision denying Mr. Tsosie's request for review and upholding the ALJ's final decision. (Tr. 1-6.) On August 3, 2017, Mr. Tsosie timely filed a Complaint seeking judicial review of the Commissioner's final decision. (Doc. 1.)

---

[2] Citations to "Tr." are to the Transcript of the Administrative Record (Doc. 16) that was lodged with the Court on November 27, 2017.

[3] Mr. Tsosie is represented in this proceeding by Attorney Michael Armstrong. (Doc. 1.)

## II.  Applicable Law

### A.    Disability Determination Process

An individual is considered disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also* 42 U.S.C. § 1382(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals).  The Social Security Commissioner has adopted the familiar five-step sequential analysis to determine whether a person satisfies the statutory criteria as follows:

(1)    At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[4]  If the claimant is engaged in substantial gainful activity, he is not disabled regardless of his medical condition.

(2)    At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s).  If the claimant does not have an impairment(s) or combination of impairments that is severe and meets the duration requirement, he is not disabled.

(3)    At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement.  If so, a claimant is presumed disabled.

(4)    If, however, the claimant's impairments do not meet or equal in severity one of the listing described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform his "past relevant work."  Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [his physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's

---

[4] Substantial work activity is work activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a), 416.972(a).  Work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.  *Id.*  Gainful work activity is work activity that you do for pay or profit.  20 C.F.R. §§ 404.1572(b), 416.972(b).

residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work. Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.

(5)     If the claimant does not have the RFC to perform his past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5, 107 S.Ct. 2287, 2294, n. 5, 96 L.Ed.2d 119 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

**B.     Standard of Review**

This Court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias,* 933 F.2d at 800-01. In making these determinations, the Court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d

1270, 1272 (10th Cir. 2008). A decision is based on substantial evidence where it is supported by "relevant evidence . . . a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley,* 373 F.3d at 1118, or "constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005). Therefore, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).

### III. <u>Analysis</u>

The ALJ made his decision that Mr. Tsosie was not disabled at step four of the sequential evaluation. (Tr. 192-93.) Specifically, the ALJ determined that Mr. Tsosie had not engaged in substantial gainful activity since July 15, 2013, the date of his application. (Tr. 180.) He found that Mr. Tsosie had severe impairments of osteoarthritis, lumbar spine disc bulge, cervical spine compression deformity of C5, asthma, obstructive sleep apnea, pain disorder with both psychological and medical factors, somatoform disorder, dependent personality disorder, and avoidant personality disorder. (*Id.*) The ALJ also found that Mr. Tsosie had nonsevere impairments of obesity, colonic diverticulosis, gastroesophageal reflux disease (GERD), erythrocytosis, and rule out factitious disorder. (Tr. 180-81.) The ALJ, however, determined that Mr. Tsosie's impairments did not meet or equal in severity one the listings described in Appendix 1 of the regulations. (Tr. 181-83.) As a result, the ALJ proceeded to step four and

found that Mr. Tsosie had the residual functional capacity to perform light work as defined in

20 C.F.R. 416.967(b) except that he was

> able to lift 20 pounds occasionally and lift and/or carry 10 pounds frequently. His ability to push and pull is only limited by his ability to lift and/or carry. He is able to walk and stand for 6 hours in an 8-hour workday, with normal breaks. He is able to sit for 6 hours per 8-hour workday, with normal breaks. He is able to occasionally climb ramps and stairs, but he can never climb ladders, ropes or scaffolds. He can occasionally stoop, crouch, kneel and crawl. He must avoid more than occasional exposure to extreme cold and heat, humidity, unprotected heights, dangerous moving machinery and pulmonary irritants, such as smoke, dust, fumes, odors and gases. He is able to understand, remember and carry out simple instructions, to make commensurate work related decisions and to adjust to routine changes in the work setting. He is able to interact frequently with supervisors, co-workers and the public. He is able to maintain concentration, persistence and pace for 2 hours at a time during the workday, with normal breaks.

(Tr. 183.) The ALJ further concluded at step four that Mr. Tsosie was able to perform his past

relevant work as an assembler, small products. (Tr. 192.) Although the ALJ determined that

Mr. Tsosie was capable of performing his past relevant work, the ALJ made alternative step five

findings that based on Mr. Tsosie's age, education, work experience, RFC, and the testimony of

the VE, there were jobs that existed in significant numbers in the national economy that

Mr. Tsosie could perform. (Tr. 192-93.)

In support of his Motion, Mr. Tsosie argues that (1) the ALJ failed to develop the record

by denying Mr. Tsosie's counsel's request to obtain a second consultative psychological

examination that specifically included intelligence and cognitive testing; and (2) the ALJ failed

to account for all the limitations assessed by examining psychological consultant, Dr. Carl B.

Adams, Ph.D. (Doc. 21 at 14-21.)

For the reasons discussed below, the Court finds there is no reversible error.

## A.     Relevant Evidence Related to Mr. Tsosie's Mental Impairments[5]

### 1.     Carl B. Adams, Ph.D.

On February 10, 2014, Mr. Tsosie presented to State agency examining psychological consultant Carl B. Adams, Ph.D., for a consultative mental status evaluation.  (Tr. 775-78.) Dr. Adams reviewed two medical reports related to Mr. Tsosie's physical impairments,[6] and a Third-Party Functional Report prepared by Georgia Begay, Mr. Tsosie's niece.  (Tr. 775.) Dr. Adams took various histories, including personal, educational, vocational, marital and medical.  (Tr. 776-77.)  Mr. Tsosie reported, *inter alia*, that he had completed the ninth grade and that his doctor told him not to go to school anymore because of his health problems.  (Tr. 776.) As a result, Mr. Tsosie left school.  (*Id.*)  Mr. Tsosie reported that he had not completed a GED or pursued further education.  (*Id.*)   As for his alleged memory loss, Mr. Tsosie reported to Dr. Adams that he will forget where is going or why he was going into a room, and forgets where he put something or what he was going to do.  (Tr. 777.)  Mr. Tsosie reported that he never had problems with depression or anxiety.  (*Id.*)

On mental status exam, Dr. Adams observed that Mr. Tsosie was able to attend and concentrate, and make eye contact, and that Mr. Tsosie expressed himself.  (Tr. 776.)  Dr. Adams noted that Mr. Tsosie's mood was stable with mild flattening; that his long and short-term recall were estimated in the low-average range; that he was a reasonably good historian; that his insight was grossly intact; that his judgment was adequate; that he was cooperative; and that his stream of thought was within normal limits.  (*Id.*)

---

[5] In his disability claim, Mr. Tsosie claimed memory loss as his only mental impairment.  (Tr. 275, 289, 443.)

[6] One report was prepared by Janne Breadon, M.D., dated May 30, 2013, in which she reported that Mr. Tsosie's pain level was a 2 and in no acute distress; and that he was alert, oriented, well developed, and in no acute distress. (Tr. 775.)  The other report referenced Mr. Tsosie's eyes, that he had myopia, astigmatism, and presbyopia.  (*Id.*)

Dr. Adams' Axis I diagnoses included pain disorder with both psychological and medical factors; Somatoform Disorder; and rule out Factitious Disorder. (Tr. 778.) His Axis II diagnoses included Dependent Personality Disorder and Avoidant Personality Disorder. (*Id.*) Dr. Adams assessed a GAF score of 60-65.[7] (*Id.*)

Dr. Adams assessed that Mr. Tsosie had no limitations with short and simple instructions; mild limitations with detailed instructions; and moderate limitations with concentration and task persistence. (Tr. 778.) He noted that Mr. Tsosie did not report any limitations with interacting with coworkers and supervisors. (*Id.*) He also assessed that Mr. Tsosie had moderate physical limitations adapting to changes, but no limitations being aware of normal hazards. (Id.)

### 2. Scott R. Walker, M.D.

On February 24, 2014, State agency nonexamining medical consultant Scott R. Walker, M.D., reviewed Mr. Tsosie's medical record evidence at the initial stage of his application.[8] (Tr.

---

[7] The GAF is a subjective determination based on a scale of 100 to 1 of "clinician's judgment of the individual's overall level of functioning." *Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders* (4th ed. 2000) at 32. A GAF score of 60-69 indicates some mild symptoms (*e.g.,* depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (*e.g.,* occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. *Id.* at 34.

[8] Dr. Walker's summary of his review of the record evidence is as follows:

> 48 y/o on T16 only initial. Alleges: memory loss. Self-reported crafts. Bilingual. No psychotropics. FO: Difficulty with understanding.
>
> ME CE 2/14: Able to concentrate and make eye contact. Opines low average range memory. Insight and judgment intact. No dangerousness. 9 edu. DAA denied. No history of depression/anxiety. Reports memory loss as forgetting why he was going into a room or where he put something. Reports physical limitations in doing hh chores. Dx Pain from both psych and medical factors, Somatoform Disorder r/o Factitious Disorder, Dependent PD, Avoidant PD.
>
> 3rd party niece: pain issues/limitations. Has friends, visits, talks, goes to church and community center. Needs written instructions explained. No interpersonal difficulties.
>
> FR appears 3rd party: Reads as hobby but is unable to read. Some language barrier. IHS Tohatchi: 2/13 alcohol, depression screens negative. 8/12 normal mood/behavior. "No gross memory deficiencies: appropriate behavior during exam."
>
> Rehoboth: 10/14 states needs to be in treatment so he can get disability. Reports trying to get disability x 13 years.

281-82.) Dr. Walker prepared a PRTF[9] and rated Mr. Tsosie's degree of limitation in the area of activities of daily living as mild; his difficulties in maintaining social functioning as mild; and his difficulties in maintaining concentration, persistence or pace as moderate. (Tr. 281.) Dr. Walker also prepared a Mental Residual Functional Capacity Assessment. (Tr. 284-85.) He found in the area of understanding and memory that Mr. Tsosie had *moderate limitations* in his ability to understand and remember detailed instructions due to being bilingual and having low education. (Tr. 284.) He found in the area of concentration and persistence that Mr. Tsosie had *moderate limitations* in his ability to (1) carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) sustain an ordinary routine without special supervision; and (4) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 284-85.) Dr. Walker explained that Mr. Tsosie's limitations in this area were due to his personality traits and his alleged pain. (Tr. 285.) Finally, Dr. Walker found that Mr. Tsosie had no limitations in the area of social interactions, although there could be some possible issues due to his English as a second language; and had no limitations in the area of adaptation, except for "possible illiteracy." (*Id.*) Based on his findings, Dr. Walker assessed that

> The claimant can understand, remember and carry out simple instructions, make simple decisions, attend and concentrate for two hours at a time, interact adequately with co-workers and supervisors, and respond appropriately to changes in a routine work setting.

(Tr. 281.)

[9] "The psychiatric review technique described in 20 CFR 404.1520a and 416.920a and summarized on the Psychiatric Review Technique Form (PRTF) requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." SSR 96-8p, 1996 WL 374184, at *4.

(Tr. 285.)

On August 13, 2014, at reconsideration, State agency medical consultant Elizabeth Chiang, M.D., affirmed Dr. Walker's PRTF and MRFC.[10]  (Tr. 297-97.)

### 3.  Samuel MacBride, M.D.

On November 22, 2015, treating physician Samuel MacBride, M.D., prepared a *Medical Assessment of Ability to Do Work Related Activities (Non-Physical)* on Mr. Tsosie's behalf.  (Tr. 1161.)  Dr. MacBride was asked to "consider the patient's medical history and the chronicity of findings as from 07/2013 to current examination."[11]  (*Id.*)  Dr. MacBride indicated that Mr. Tsosie suffered from a pain producing impairment, injury or sickness; that his pain was not severe; that he did not suffer from sleep disturbances due to pain or any other cause; and that he suffered from fatigue as a result of his impairments and had to rest or lie down at regular intervals because of his pain and/or fatigue.  (*Id.*)  Dr. MacBride assessed that Mr. Tsosie had *slight limitations* in his ability to (1) maintain attention and concentration for extended periods (*i.e.,* 2-hour segments); (2) perform activities within a schedule; (3) maintain regular attendance and be punctual within customary tolerance; (4) sustain an ordinary routine without special supervision; and (5) work in coordination with/or proximity to others without being distracted by them.  (*Id.*)  He also assessed that Mr. Tsosie had *moderate limitations* in his ability to (1) maintain physical effort for long periods without a need to decrease activity or pace, or to rest intermittently (*i.e.,* 2-hour segments); (2) make simple work-related decisions; and (3) complete a normal workday and workweek without interruptions from pain or fatigue based symptoms and

---

[10]  Dr. Chiang noted that the updated medical evidence record at reconsideration all pertained to Mr. Tsosie's physical impairments and there were no psychological complaints.  (Tr. 296.)

[11]  The record supports that Mr. Tsosie had seen Dr. MacBride only twice in 2015 before he completed the assessment on Mr. Tsosie's behalf.  (Tr. 1056-57, 1106-07.)

to perform at a consistent pace without unreasonable number and length of rest periods. (Tr. 1161.)

### B.      Failure to Develop the Record

Mr. Tsosie argues that the ALJ failed to properly develop the record because he denied Plaintiff's counsel's requests for a second psychological consultative examination that specifically included cognitive and intellectual testing. (Doc. 21 at 14-19.) Mr. Tsosie explains that prior to and during the Administrative Hearing, his counsel requested an order from ALJ Weiss for a consultative psychological evaluation that specifically included cognitive and intelligence testing. (*Id.* at 15, Tr. 225, Tr. 1187-89.) In support of his requests, Mr. Tsosie's counsel argued that the medical source evidence related to Mr. Tsosie's mental impairment established a "reasonable possibility" that Mr. Tsosie suffered from an impairment or combination of impairments that foreclosed work on a regular and continuing basis. (Doc. 21 at 15-16, Tr. 1189.) Specifically, Mr. Tsosie cited (1) Dr. MacBride's assessment that he was moderately limited in his ability to make simple work-related decisions; (2) Dr. Walker's findings that he had certain limitations in his ability to sustain concentration and persistence; (3) Dr. Walker's finding that Mr. Tsosie might have some difficulties in social interactions due to English as a second language; (4) Dr. Walker's finding that Mr. Tsosie might have difficulties with adaptation due to "possible illiteracy"; and (5) Dr. Adams' observation on mental status exam that Mr. Tsosie's long and short-term memory was in the low-average range. (*Id.*) Mr. Tsosie also cited his alleged history of depression and memory loss. (*Id.*) In further support, Mr. Tsosie argued then and now that he did not complete high school, was unable to obtain his GED, and has a limited ability to understand English. (*Id.*) In his Motion, Mr. Tsosie includes a portion of his hearing testimony to demonstrate his lack of ability to understand and answer

simple questions posed to him in English. (Doc. 21 at 17-18.) For all of these reasons, Mr. Tsosie asserts that a second psychological consultative examination with cognitive and intelligence testing could reasonably be expected to be of material assistance in resolving the issue of his disability and render the ALJ's RFC complete. (*Id.* at 18.)

The Commissioner contends that substantial evidence supports the ALJ's finding that Mr. Tsosie could speak and understand English, and that none of the medical source evidence suggested that Mr. Tsosie might have a cognitive impairment, learning disability, neurocognitive impairment, or any other intellectual disability. (Doc. 24 at 5-10.) The Commissioner further contends that an ALJ need only order a consultative examination where the record contains "some objective evidence" to suggest the existence of a condition which could have a material impact on the disability decision that requires further investigation. (*Id.* at 9-10.) There being no such objective evidence, the Commissioner asserts that Mr. Tsosie's argument that the ALJ was required to order a second psychological consultative examination with cognitive and intelligence testing should be rejected. (*Id.* at 10.)

Here, the ALJ denied Mr. Tsosie's requests for a second psychological consultative exam in his written opinion. (Tr. 178.) In so doing, the ALJ explicitly stated that "based on the evidence of record and the psychological consultative examination already in the record, it is not necessary to order another such examination." (*Id.*) The ALJ also evaluated and weighed the medical source evidence related to Mr. Tsosie's alleged mental impairments.[12] The ALJ accorded Dr. Adams' opinion significant weight, explaining that Dr. Adams was an acceptable medical source and that his opinion was supported by the evidence of record, including Mr. Tsosie's testimony. (Tr. 191.) The ALJ accorded Dr. Walker's opinion limited weight,

---

[12] Mr. Tsosie raises no issues related to the ALJ's evaluation and weighing of the medical source evidence. *See* fn. 22, *infra*.

noting that more recent evidence indicated that Mr. Tsosie was "more limited in several of the 'paragraph B' criteria domains than he opined." (*Id.*) The ALJ also accorded limited weight to Dr. MacBride's opinion, explaining that the evidence in the record indicated that Dr. MacBride only saw Mr. Tsosie a few times before completing the medical source statement, that his opinion was not consistent with his own treatment records, and that he admitted that his findings were largely based only on Mr. Tsosie's reports of pain and fatigue. (*Id.*)

The question before the Court is whether the ALJ abused his discretion in denying Mr. Tsosie's requests for a second consultative psychological evaluation given the medical record evidence in this case. "It is beyond dispute that the burden to prove disability in a social security case is on the claimant[,] . . . [n]evertheless, because a social security disability hearing is a nonadversarial proceeding, the ALJ is 'responsible in every case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised.'" *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006) (quoting *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997)). The ALJ's "duty to develop the record pertains even if the claimant is represented by counsel." *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007) (quoting *Thompson v. Sullivan*, 987 F.2d 1482, 1492 (10th Cir. 1993)).

The Commissioner "has broad latitude in ordering consultative examinations." *Barrett v. Astrue*, 340 F. App'x 481, 486 (10th Cir. 2009) (unpublished) (quoting *Hawkins*, 113 F.3d at 1166).[13] When a claimant contends that the ALJ erred in failing to obtain a consultative

---

[13] In *Barrett*, the claimant argued the ALJ should have obtained a consultative psychological exam alleging that the medical evidence was inconclusive regarding the effects of his alleged disabling mental impairments. 340 F. App'x at 486. The claimant argued that he had a history of suicide attempt, special education classes, taking antidepressant medication, and that he testified that his wife filled out his disability forms on his behalf because he did not understand them, and that she commented therein that he had difficulty following oral and written instructions. *Id.* The Court was not persuaded and noted the record evidence regarding Mr. Barrett's daily activities and physical abilities, the medical consultant's PRT and MRFCA assessment findings, and that medication controlled the claimant's depression. *Id.* at 487. The Court further explained that the claimant's wife's comments were isolated

examination, the Court is presented with the difficult issue of "decid[ing] what quantum of evidence a claimant must establish of a disabling impairment or combination of impairments before the ALJ will be required to look further." *Id.*

> The difficult cases are those where there is *some* evidence in the record or *some* allegation by a claimant of a possibly disabling condition, but that evidence, by itself, is less than compelling. . . . Our review of the cases and the regulations leads us to conclude that the starting place must be the presence of some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation. . . . Isolated and unsupported comments by the claimant are insufficient, by themselves, to raise the suspicion of the existence of a nonexertional impairment.

*Id.* at 1167 (citations omitted) (emphasis in original.) "Ordinarily, the claimant must in some fashion raise the issue sought to be developed, . . . which, on its face, must be substantial."

*Hawkins*, 113 F.3d at 1167 (citations omitted).

> [T]he claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists. When the claimant has satisfied his or her burden in that regard, it then, and only then, becomes the responsibility of the ALJ to order a consultative examination if such an examination is necessary or helpful to resolve the issue of impairment.

*Id.* The court in *Hawkins* identified three instances when such an examination is often required: "where there is a direct conflict in the medical evidence"; "where the medical evidence is inconclusive"; and "where additional tests are required to explain a diagnosis already contained in the record." *Id.* at 1166; *see also* 20 C.F.R. § 416.919a (describing when the Administration will purchase a consultative examination).

Mr. Tsosie has not met his initial burden regarding his alleged cognitive or intellectual limitations. There is no evidence in the record to suggest a reasonable possibility that Mr. Tsosie suffered a cognitive or intellectual impairment that was, on its face, substantial such that a severe

---

and unsupported and were insufficient, by themselves, to raise the suspicion of the existence of a nonexertional impairment. *Id.* The Court held the ALJ did not err in failing to obtain a consultative psychological exam. *Id.*

mental impairment exists.[14]  *See generally Sneed v. Barnhart*, 88 F. App'x 297, 301 (10th Cir. 2004) (finding that "isolated comments about [claimant's] possible limited intelligence, when viewed as part of the entire record, do not sufficiently raise a question about [her] intelligence"). Further, the evidence Mr. Tsosie cites is unpersuasive.  As for the medical source evidence, Mr. Tsosie cites Dr. Adams' psychological consultative exam in which he observed that Mr. Tsosie's long and short-term memory was in the low-average range.  However, despite that observation, Dr. Adams assessed that Mr. Tsosie had no limitations with short and simple instructions; mild limitations with detailed instructions; and moderate limitations with concentration and task persistence.  (Tr. 778.)  More significantly, Dr. Adams did not include or suggest any diagnosis that indicated Mr. Tsosie suffered decreased cognitive or intellectual functioning.[15]  Mr. Tsosie cites certain of Dr. Walker's findings related to his ability to concentrate and persist, but ignores that Dr. Walker ultimately assessed that Mr. Tsosie had the functional capacity to perform all the work-related mental activities generally required for unskilled work.[16]  *See Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015) (finding that limiting a claimant to unskilled work took into account moderate limitations in concentration, persistence

---

[14] *See* Section III.A., *supra*.  The Court has meticulously reviewed the entire record and found no evidence of a cognitive or intellectual impairment in any of Mr. Tsosie medical records, including those related to his physical impairments that are not specifically discussed here.  To the contrary, records related to Mr. Tsosie's physical impairments wherein psychological exams were included consistently indicated normal mood and affect, no gross memory deficits, no thought disorder, no psycho/social problems, no depression, appropriate behavior, and normal interaction.  (Tr. 621, 636, 642, 647, 653, 658, 667, 817, 941, 1196, 1211, 1214, 1218, 1222.)  Additionally, there is no evidence of significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during Mr. Tsosie's development period before the age of 22.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05 (2014) (describing criteria for intellectual disability).

[15] *See* Section III.A.1., *supra.*

[16] Dr. Walker also completed a PRTF in which he rated Mr. Tsosie as having no limitations in the area of activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence and pace.  (Tr. 281.)  *See generally, Sneed v. Barnhart*, 88 F. App'x 297, 300-301 (10th Cir. 2004) (finding that the ALJ did not err in not obtaining psychological testing based on claimant's allegations of low IQ, in part, because the agency's PRT and MRFCA forms did not support a significant limitation in the claimant's ability to understand, remember, sustain concentration and persistence, socially interact, and adapt to changes in the workplace setting.)

and pace, and that the capacity to perform unskilled work includes the ability to maintain attention for extended periods of two-hour segments, but that concentration is "not critical"); *see also* SSR 96-9p, 1996 WL 374185, at *9 (explaining that unskilled work generally requires only the following: (1) "[u]nderstanding, remembering, and carrying out simple instructions"; (2) "[m]aking judgments that are commensurate with the functions of unskilled work – *i.e.,* simple work-related decisions"; (3) "[r]esponding appropriately to supervision, co-workers and usual work situations"; and (4) "[d]ealing with changes in a routine work setting.").[17]  Finally, Mr. Tsosie cites Dr. MacBride's medical source statement in which he assessed that Mr. Tsosie had moderate limitations in his ability to make simple work-related decisions.  However, the ALJ accorded Dr. MacBride's medical source statement limited weight, a finding Mr. Tsosie has not disputed.  Moreover, Dr. MacBride based his assessed limitations on Mr. Tsosie's self-reported *pain and fatigue* related to his physical impairments, and not to any self-reported or diagnosed cognitive or intellectual impairment.[18]  In sum, none of the medical source evidence suggests a reasonable possibility that Mr. Tsosie suffered a severe impairment based on cognitive or intellectual limitations.  *Hawkins*, 113 F.3d at 1167; *see also* 20 C.F.R. 416.929(a) (explaining that there must be objective medical evidence from an acceptable medical source that shows you have a medical impairment which could reasonably be expected to produce the symptoms alleged).

Mr. Tsosie's argument that his alleged depression and memory loss support the reasonable possibility of a cognitive and/or intellectual impairment is equally unavailing because

---

[17] Citing *Chapo v. Astrue*, 682 F.3d 1285, 1290, n.3 (10th Cir. 2012), the *Vigil* court noted that there may be cases in which an ALJ's limitation to "unskilled" work, without more, does not adequately address a claimant's mental limitations.  *Vigil*, 805 F.3d at 1204.  Here, the ALJ did not simply limit Mr. Tsosie to "unskilled" work, but expressed Mr. Tsosie's nonexertional capacity in terms of work-related functions as he was required to do.  *See Jaramillo v. Colvin*, 576 F. App'x 870, 876 (10th Cir. 2014) (unpublished).

[18] Mr. Tsosie also testified his difficulties with concentration were related to pain and fatigue.  (Tr. 224.)

his allegations are isolated and unsupported. *Hawkins*, 113 F.3d at 1167. Although Mr. Tsosie cites to one record in which he self-reported depression, and testified that he has depression (Tr. 216), the overall record demonstrates no history of or treatment for depression. The ALJ similarly found, at step two, that there were no medical records in evidence diagnosing depression and that none were provided post-hearing. (Tr. 181.) As such, the ALJ did not consider it as an alleged impairment under the regulations because it was not medically determinable.[19] (*Id.*) The records related to Mr. Tsosie's physical impairments wherein psychological exams were included consistently indicated normal mood and affect, no gross memory deficits, no thought disorder, no psycho/social problems, no depression, appropriate behavior, and normal interaction. (Tr. 621, 636, 642, 647, 653, 658, 667, 817, 941, 1196, 1211, 1214, 1218, 1222.) Further, Mr. Tsosie reported to Dr. Adams that he never had problems with depression. (Tr. 777.) As for Mr. Tsosie's alleged memory loss, the same psychological exams referenced above consistently demonstrated no gross memory deficits or thought disorder. (Tr. 621, 642, 647, 653, 658, 667, 941.) Additionally, Dr. Adams noted that Mr. Tsosie was a reasonably good historian and that his stream of thought was within normal limits. (Tr. 776.) *See Sneed*, 88 F. App'x at 300-01 (finding that the ALJ did not err in not obtaining additional IQ testing even though acceptable medical source evidence demonstrated that the claimant had low-average intelligence and was mentally slow, because, in part, an examining physician also found that the claimant "had goal-directed language, good responses to spoken words, no gross thought disorder, good general information and long term memory, good judgment, full orientation, ability to give his history, fair abstract thinking, fair concentration and fair short term memory"). Finally, when asked to provide examples about his memory problems, Mr. Tsosie

---

[19] Mr. Tsosie has not disputed the ALJ's step two findings.

testified that he once left the stove on, and that he needed reminders to take his medications.[20] (Tr. 224-25.)  In light of the record evidence, Mr. Tsosie has failed to demonstrate how his isolated and unsupported comments about his alleged depression and memory loss suggest a reasonable possibility that he suffered a severe impairment based on cognitive or intellectual limitations.  *Hawkins*, 113 F.3d at 1167.

Finally, Mr. Tsosie's limited education and limited ability to speak English does not suggest a reasonable possibility that he has a severe impairment based on cognitive or intellectual limitations.  A claimant's education, which includes his ability to communicate in English, is a vocational factor the ALJ considers in determining whether a claimant is disabled at step five.  20 C.F.R. §§ 416.960, 416.964.  The ALJ did so here.  (Tr. 184, 192.)  Mr. Tsosie reported that he completed the ninth grade and did not attend special education.  (Tr. 444.)  *See* 20 C.F.R. § 416.964(b)(3) (explaining that a 7th through 11th grade level of formal education is considered a limited education and presumes the ability in reasoning, arithmetic and language skills for unskilled work).  Mr. Tsosie also reported to Dr. Adams and testified that his doctor told him to discontinue school due to health problems.  (Tr. 217, 776.)  Further, even though Mr. Tsosie testified that he had later tried to take the GED and was unable to pass, there is no evidence regarding how long after he left school he made such an attempt, what preparation efforts he undertook, or if he attempted the exam more than once.[21]  (Tr. 217.)  As such, there is nothing about Mr. Tsosie's limited education to suggest a reasonable possibility of cognitive or intellectual limitations.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.05 (2014) (describing

---

[20] The various functional reports also reported that Mr. Tsosie needed reminders to take his medications.  (Tr. 426, 452, 476.)

[21] Mr. Tsosie reported to Dr. Adams that after he left school he did not complete a GED or pursue any further education.  (Tr. 776.)

criteria for intellectual disability) and 12.00(H)4.a-h (explaining evidence that demonstrates or supports that an intellectual disability began prior to age 22).

As for Mr. Tsosie's alleged limited ability to communicate in English, the record demonstrates that Mr. Tsosie initially reported that he preferred American Navajo, but that he could read and understand English, and could write more than his name in English. (Tr. 442.) Many of Mr. Tsosie's medical records indicated that he reported English as his primary language. (Tr. 8, 142, 720, 725, 869, 876, 883, 890, 900, 907.) Mr. Tsosie expressed himself in English during his psychological consultative exam with Dr. Adams. (Tr. 775-77.) Mr. Tsosie testified at his first Administrative Hearing in English, without the assistance of a Navajo interpreter who was present but not called upon because Mr. Tsosie testified he did not need any translation. (Tr. 233-39.) Mr. Tsosie testified at his second Administrative Hearing in English.[22] (Tr. 202-32.) Although Mr. Tsosie's Motion includes a portion of his testimony to support his inability to understand and answer simple questions posed to him, the Court's review of the hearing transcript demonstrates that Mr. Tsosie answered questions related to, *inter alia*, his age, schooling, height, weight, past employment, dream catchers, living conditions, driving, daily activities, reasons for not working, wife's employment, sources of pain, health conditions, medications, sleep apnea and his use of a CPAP machine, and his mental health. (Tr. 206-25.) But all of that aside, even if Mr. Tsosie had no ability to speak and understand English, that would not, on its face, demonstrate cognitive or intellectual limitations. Instead, it is an educational factor the ALJ considers when making his decision at step five. *See generally* 20 C.F.R. 416.964(b)(5) (explaining that the ALJ considers a person's ability to communicate in English because it may be difficult for someone who doesn't speak and understand English to a

---

[22] There is nothing in the record to support that Mr. Tsosie requested an interpreter and/or objected to the hearing being conducted in English.

do a job, regardless of the amount of education the person may have in another language). The ALJ did so here. (Tr. 184, 192.) Thus, Mr. Tsosie has failed to demonstrate how his limited ability to communicate in English suggested a reasonable possibility of a severe impairment based on cognitive or intellectual limitations.

For all of the foregoing reasons, the Court finds that sufficient information existed in the record evidence for the ALJ to conclude that Mr. Tsosie's mental impairments were not disabling and that a second psychological consultative exam to specifically test Mr. Tsosie's cognitive and intellectual abilities was not necessary. *Hawkins*, 113 F.3d at 1166. As such, there is no reversible error as to this issue.

## B.    The ALJ's Mental RFC

Mr. Tsosie argues that the ALJ failed to account for all of Dr. Adams' moderate limitations in his mental RFC. (Doc. 21 at 19-21.) Specifically, Mr. Tsosie argues that the ALJ accorded Dr. Adams' opinion significant weight, but that the ALJ failed to account for Dr. Adams' moderate limitations related to Mr. Tsosie's ability to concentrate and persist, and to adapt to changes in the workplace.[23] (*Id.*) The Commissioner contends that the ALJ's mental RFC, taken as a whole, does not conflict with Dr. Adams' opinion. (Doc. 24 at 10-14.)

---

[23] As part of his mental RFC argument, Mr. Tsosie concludes, without more, that the ALJ's statement regarding the weight accorded Dr. Adams' opinion was conclusory, contained no analysis, and left unanswered the question of whether he adopted any portion of Dr. Adams' opinion in the RFC. (Doc. 21 at 21.) This argument is unspecific, undeveloped, and unsupported. As such, it is waived. *See Tietjen v. Colvin*, 527 F. App'x 705, 709 (10th Cir. 2013) (finding that arguments raised in a perfunctory manner are waived) (citing *United States v. Hardman*, 297 F.3d 1116, 1131 (10th Cir. 2002)). Moreover, the ALJ provided an explanation for the weight he accorded Dr. Adams' opinion; *i.e.,* it was supported by the evidence of record. (Tr. 191.) *See* 20 C.F.R. 416.927(c)(4) (explaining that more weight will be accorded to medical opinion evidence that is consistent with the record as a whole); *see also Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (holding that it is not necessary for the ALJ to address each regulatory factor expressly or at length provided that the ALJ offers good reasons in his opinion for the weight he accorded to a medical opinion). Further, it is clear from the ALJ's determination that the ALJ adopted Dr. Adams' opinion in the RFC.

RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, may cause physical or mental limitations or restrictions that may affect his capacity to do work-related physical and medical activities. 20 C.F.R. §§ 404.1545, 416.945; SSR 96-8p, 1996 WL 374184, at *2. In determining a claimant's RFC, the ALJ should first assess the nature and extent of the claimant's physical and mental limitations. 20 C.F.R. §§ 404.1545(b) and (c), 416.945(b) and (c). The ALJ is required to consider all of the claimant's impairments, including impairments that are not severe. *See* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); *see also Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "[T]he ALJ must make specific findings," *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996), that are "supported by substantial evidence." *Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999). The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and nonmedical evidence. SSR 96-8p, 1996 WL 374184, at *7.

Here, at step two, the ALJ determined that Mr. Tsosie had mental impairments of somatoform disorder, dependent personality disorder, and avoidant personality disorder. (Tr. 180.) Having found that his mental impairments did not meet or medically equal the severity of one of the listing (Tr. 181-83), the ALJ determined at step four that Mr. Tsosie had the mental residual capacity to

> understand, remember and carry out simple instructions to make commensurate work related decisions and to adjust to routine changes in the work setting. He is able to interact frequently with supervisors, co-workers and the public. He is able to maintain concentration persistence and pace for 2 hours at a time during the workday, with normal breaks.

(Tr. 183.) In making that assessment, the ALJ reviewed all of the evidence in the record (Tr. 180), evaluated and weighed the medical source evidence related to Mr. Tsosie's mental

impairments (Tr. 189-91), and provided a narrative discussion describing how the evidence supported his conclusion (*id.*). SSR 96-8p, 1996 WL 374184, at *7.

As previously stated, the ALJ accorded Dr. Adams' opinion significant weight, explaining that Dr. Adams was an acceptable medical source and that his opinion was supported by the evidence of record, including Mr. Tsosie's testimony. (Tr. 191.) Further, the ALJ incorporated all of Dr. Adams' functional limitations in his mental RFC contrary to Mr. Tsosie's argument. For example, Dr. Adams assessed that Mr. Tsosie had mild limitations with detailed instructions and no limitations with short and simple ones. (Tr. 778.) Here, the ALJ, in turn, assessed Mr. Tsosie was able to understand, remember and carry out simple instructions. (Tr. 183.) Dr. Adams assessed that Mr. Tsosie had moderate limitations with concentration and task persistence. (Tr. 778.) The ALJ assessed that Mr. Tsosie was able to maintain concentration, persistence and pace for 2 hours at a time. (Tr. 778.) *See Vigil*, 805 F.3d at 1204.[24] Dr. Adams assessed that Mr. Tsosie did not report any limitations in interacting with coworkers and supervisors. (Tr. 778.) The ALJ assessed that Mr. Tsosie could interact frequently with supervisors, co-workers and the public. (Tr. 183.) Finally, Dr. Adams assessed that Mr. Tsosie had moderate *physical* limitations adapting to changes,[25] but no limitations being aware of normal hazards. (Tr. 778.) Given that Dr. Adams found no mental functional limitations in

---

[24] Mr. Tsosie's past relevant work is unskilled with an SVP of 2 and reasoning level of 2 (DOT 739.687-030 Small Products Assembler); the jobs the VE identified and the ALJ relied on in his alternate step five findings are all unskilled, with SVPs of 2. (Tr. 192, 193.) Two of the three jobs in the ALJ's alternate step five findings require reasoning levels of 2 (DOT 363.684-018 Hand Presser; DOT 311.677-010 Cafeteria Attendant). The Tenth Circuit has held that level-two reasoning jobs are consistent with the ability to do simple and routine work tasks. *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005).

[25] Dr. Adams noted that during his mental status exam, Mr. Tsosie went "on and on with various sundry medical complaints from nosebleeds to not being able to taste food to hemorrhoids." (Tr. 776.) He also noted that Mr. Tsosie had a large number of minor complaints: "Aches, pains, nosebleeds, difficulties with his left wrist, loss of the tip of his third finger on his right hand years ago, memory loss, food poisoning at a church bazaar and he was rushed to the hospital, and the list goes on and on." (Tr. 778.)

adaptation,[26] the ALJ, in turn, assessed that Mr. Tsosie could adjust to routine changes in the work setting.[27] (Tr. 183.) Thus, contrary to Mr. Tsosie's argument, the ALJ adopted all of Dr. Adams' limitations and his argument necessarily fails. The ALJ's mental RFC is also consistent with and supported by the other substantial medical source evidence in the record. *Haddock*, 196 F.3d at 1088. There is no reversible error as to this issue.

### IV. <u>Conclusion</u>

For the reasons stated above, Mr. Tsosie's Motion to Reverse and Remand for a Rehearing With Supporting Memorandum (Doc. 21) is **DENIED.**

_____

**KIRTAN KHALSA**
**United States Magistrate Judge,**
**Presiding by Consent**

---

[26] Adaptation limitations include a claimant's (1) ability to respond appropriately to changes in the work setting; (2) to be aware of normal hazards and take appropriate precautions; (3) to travel in unfamiliar places or use public transportation; and (4) to set realistic goals or make plans independently of others. SSA Form SSA-4734-F4-SUP.

[27] To the extent Mr. Tsosie is arguing that that ALJ failed to incorporate adaptation limitations related to Mr. Tsosie's *physical* impairments, his argument is unspecific, undeveloped and unsupported. As such, it is waived. *See Tietjen v. Colvin*, 527 F. App'x 705, 709 (10th Cir. 2013) (finding that arguments raised in a perfunctory manner are waived) (citing *United States v. Hardman*, 297 F.3d 1116, 1131 (10th Cir. 2002)). Moreover, adaptation limitations are specifically related to a claimant's ability to perform work-related *mental* activities generally required by competitive, remunerative work. *See* SSR 96-8p, 1996 WL 374184, at *6.